IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

MAY 2 0 2005 *rq*

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| PRISCILLA EDWARDS | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04 C 3395 |
| | ) | |
| THE CITY OF CHICAGO, | ) | Judge Wayne R. Andersen |
| | ) | |
| Defendant. | ) | |

## MOTION TO MAKE A CORRECTION TO DEFENDANT'S
## LOCAL RULE 56.1(a)(3) STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant City of Chicago ("the City"), by its attorney, Mara S. Georges, Corporation Counsel of the City, moves this Court to permit the City to make a correction to Fact No. 62 in its Local Rule 56.1(a)(3) Statement of Undisputed Facts. In support of this motion, the City attaches Osagie Igbinosun's supplemental affidavit and states as follows:

1.      On March 4, 2005, the City filed, among other pleadings related to its motion for summary judgment, its Local Rule 56.1(a)(3) Statement of Undisputed Material Facts, which is attached to the City's Summary Judgment Exhibit Appendix. One of the exhibits included in the City's Appendix is Osagie Igbinosun's Affidavit. (Defendant's Ex. H, Igbinosun Aff.).

2.      In paragraph 14 of his affidavit, Igbinosun states that one of plaintiff's co-workers at the Uptown Clinic, Fred Woods, left Uptown to work for another clinic in approximately June 2001. (Defendant's Ex. H, Igbinosun Aff. ¶ 14). He also stated that another City employee, Samuel Cordova, replaced Woods in July 2001. Id. Igbinosun made those statements to the best of his recollection. (Osagie Igbinosun's Supplemental Affidavit

("Igbinosun Supp. Aff."), ¶ 5, attached to this motion as Exhibit 1).[1]

3.     Defendant City's Fact No. 62 in its Statement of Undisputed Material Facts states, in part, that Fred Woods left Uptown to work for another clinic in approximately June 2001, and Sam Cordova replaced Woods in July 2001. The City cited to paragraph 14 of Igbinosun's affidavit to support those statements.

4.     After signing his affidavit, Igbinosun learned through personnel records that Cordova began working at Uptown on June 25, 2001. (Ex. 1, Igbinosun Supp. Aff. ¶ 5 ). He also learned that Woods left Uptown on January 22, 2002. Id.

5.     To ensure that the record in this case is accurate, the City seeks leave to file a corrected Fact No. 62, which contains the correct dates that Cordova arrived at the Uptown Clinic and Woods left there. (A copy of the City's proposed corrected Fact No. 62 is attached to this motion as Exhibit 2).

6.     Permitting the City to correct Defendant's Fact No. 62 will have no substantive effect on the City's pending motion for summary judgment. In her response to the City's Local Rule 56.1(a)(3) Statement of Undisputed Material Facts, plaintiff admitted Fact No. 62. (Plaintiff's Rule 56.1(b) Response to Defendant's 56.1(a) Statement of Facts, ¶ 62).

Wherefore, the City requests that the Court permit it to correct Fact No. 62 in its Statement of Undisputed Material Facts and file corrected Fact No. 62.

---

[1]Osagie Igbinosun's Supplemental Affidavit also is attached to Defendant City's Response to Plaintiff's Local Rule 56.1(b)(3)(B) Statement of Additional Facts as Exhibit J.

2

Respectfully submitted,

MARA S. GEORGES
Corporation Counsel of the
City of Chicago

Dated: May 20, 2005          By: Kathleen V. Crowe

KATHLEEN V. CROWE
Assistant Corporation Counsel


30 North LaSalle Street, Suite 1020
Chicago, Illinois 60602
(312) 744-5453

3



IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PRISCILLA EDWARDS,                    )
                                      )
        Plaintiff,                    )
    v.                                )        No. 04 C 3395
                                      )
THE CITY OF CHICAGO,                  )        Judge Wayne R. Andersen
                                      )
        Defendant.                    )

## OSAGIE IGBINOSUN'S SUPPLEMENTAL AFFIDAVIT

I, Osagie Igbinosun, based on personal knowledge and a review of City of Chicago

personnel records attest and state as follows:

1.      Priscilla Edwards' attorney, Clara Larry, took my deposition on January 28, 2005.

I have reviewed my deposition transcript.

2.      During my deposition, Ms. Larry asked how many female Communicable

Disease Investigators ("CDI-2") I supervised in 2000. I told her that I supervised three female

CDI-2s, including Ms. Edwards. That testimony is found on page 51 of my deposition transcript.

Ms. Larry then asked me "How many were African-Americans", and I responded, "One." When

Ms. Larry asked me "how many were African-Americans," I thought she was asking me how

many female, African-American CDI-2s I supervised in 2000. As I testified, I supervised one

female, African-American CDI-2 in 2000, Ms. Edwards.

3.      Ms. Edwards was not the only African-American CDI-2 whom I supervised at the

Uptown Clinic in 2000, however. During that year, I also supervised Fred Woods, a male,

African-American CDI-2.

4.      In 2000, I supervised the tuberculosis ("TB") field staff who worked out of the

Uptown Clinic, which included CDI-2s, nurses, public health assistants, and a data entry clerk.

During 2000, in addition to Ms. Edwards, I supervised approximately eleven female employees

at Uptown, including CDI-2s, Priscilla Edwards, Kanitha Kang and Nilda Soto; nurses, Ganiat

Sarumi, Yvonne Agyarguah, Sylvia Elazegui, Carmelita Balmadrid, and Padma Kumar; public

health assistants, Pamela Crowder and Ada Reyes; and data entry clerk, Kim Wilson. Ms.

Sarumi, Ms. Agyarguah, Ms. Crowder and Ms. Wilson are African American.

5.      In paragraph 14 of the affidavit I gave in support of the City of Chicago's motion

for summary judgment, I stated that Fred Woods left the Uptown Clinic to work for another

clinic in approximately June 2001, and Sam Cordova replaced Woods in July 2001. At the time I

made that statement, I believed it to be true, to the best of my recollection. After I signed the

affidavit, I learned through City personnel records that Sam Cordova began working at the

Uptown Clinic on June 25, 2001 and Fred Woods left Uptown on January 22, 2002.

6.      While Ms. Edwards worked at the Uptown Clinic, I never permitted her

co-workers, during meetings, or at any other time, to tell Ms. Edwards that they disliked her or

wanted her to transfer. I never heard Ms. Edwards' co-workers tell her that they did not like her

or wished that she would transfer or leave the Uptown Clinic.

7.      I never permitted Fred Woods or any other of Ms. Edwards' co-workers to call her

"Buckwheat" or ridicule her. I never heard anyone call or refer to Ms. Edwards as "Buckwheat"

or make fun of her hair style. Ms. Edwards never advised me that she believed she had been

called "Buckwheat" or that her co-workers had ridiculed her hair. No one approached me on Ms.

Edwards' behalf to report that Fred Woods or any other co-worker had called her "Buckwheat"

2

or made fun of her.

8.      I never allowed Ms. Edwards' co-workers, during meetings, or at any other time, to tell her to "shut up." I have never told Ms. Edwards or any other employee to "shut up." I never criticized Ms. Edwards in front of the staff or directed her to step into my office. I have never told Ms. Edwards that I did not want to "hear any hearsay" from her.

9.      Rosalyn Rand worked as a clinic nurse supervisor at the Uptown Clinic while Ms. Edwards was there. Ms. Rand supervised the TB clinic staff. She did not supervise any of the TB field employees whom I supervised. Ms. Rand did not supervise Ms. Edwards.

10.     Ms. Rand never told me that Ms. Edwards believed she was being harassed because of her race, gender or age. Ms. Rand never told me that Ms. Edwards believed she had been called "Buckwheat."

11.     Ms. Rand only told me that Ms. Edwards had told her that she was having difficulty working with her TB team, and she believed they criticized her work. In response to Ms. Rand's report, I spoke with Ms. Edwards, and asked her why she was having problems working with the TB field staff. Ms. Edwards told me that she did not want to talk about it.

12.     Laura McDonald worked as a clinic nurse supervisor at the Uptown Clinic while Ms. Edwards was there. Ms. McDonald supervised the clinic staff who handled maternity health. Ms. McDonald did not supervise any of the TB field employees whom I supervised. Ms. McDonald did not supervise Ms. Edwards. Ms. McDonald never told me that Ms. Edwards complained about feeling harassed by her co-workers.

If required to do so, I would testify in Court to each of the facts contained in this Supplemental Affidavit.

3

Osayie Igbinosun
Nursing Supervisor

Subscribed and sworn to before me on this

18 day of May, 2005.

"OFFICIAL SEAL"
DARNISHIA McKNIGHT
Notary Public, State of Illinois
My Commission Expires Sept. 27, 2008

4

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PRISCILLA EDWARDS,                    )
                                       )
          Plaintiff,                   )
     v.                                )     No. 04 C 3395
                                       )
THE CITY OF CHICAGO,                   )     Judge Wayne R. Andersen
                                       )
          Defendant.                   )

## DEFENDANT CITY OF CHICAGO'S CORRECTED
## LOCAL RULE 56. 1(a)(3) UNDISPUTED MATERIAL FACT NO. 62

Defendant City of Chicago ("City"), by its attorney Mara S. Georges, Corporation

Counsel for the City, submits Corrected Local Rule 56.1(a)(3) Undisputed Material

Fact No. 62.

### Plaintiff's Co-workers

62.     From November 2000 through mid June 2001, seven CDI-2s, including plaintiff,

worked at the Uptown Clinic. (See Ex. C, Pltf. Dep., p. 36, ln. 8-23; Ex. H, Igbinosun Aff.

¶ 14). The other CDI-2s included Miguel Delgado, Anthony Garcia, Kanitha Kang, Frank Romano,

Nilda Soto, and Fred Woods. (Ex. C, Pltf. Dep., p. 26, ln. 6-19, p. 36, ln. 8-23; see Ex. D, Mitchell

Aff. ¶¶ 5-9; Ex. H, Igbinosun Aff. ¶14). On June 25, 2001, Samuel Cordova began working at the

Uptown Clinic as a CDI-2. (Osagie Igbinosun's Supplemental Affidavit ("Igbinosun Supp. Aff"),

¶ 5, attached to the Defendant's Response to Plaintiff's Local Rule 56.1(b)(3)(B) Statement of

Additional Facts ("Def. Resp.") as Exhibit J; Tasneem Shakir's Affidavit ("Shakir Aff."), ¶ 7,

attached to Def. Resp. as Exhibit K ). On January 22, 2002, Fred Woods left Uptown to work at

another clinic. (Defendant's Ex. J, Igbinosun Supp. Aff. ¶ 5; Defendant's Ex. K, Shakir Aff. ¶ 7 ).

Respectfully submitted,

MARA S. GEORGES
Corporation Counsel of the
City of Chicago

Dated: May 20, 2005                    BY:  *Kathleen V. Crowe*

KATHLEEN V. CROWE
Assistant Corporation Counsel
VALERIE DEPIES HARPER
Senior Counsel

Employment Litigation Division
30 N. LaSalle Street, Suite 1020
Chicago, IL 60602
(312) 744-5453/4746

## CERTIFICATE OF SERVICE

I certify that, on May 20, 2005, I caused a true and correct copy of Agreed Motion to Make a Correction to Defendant's Rule 56.1(a) Statement of Undisputed Material Facts to be served, by hand-delivery, on the attorney named in the attached Notice of Motion.

KATHLEEN V. CROWE
Assistant Corporation Counsel