# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PRICILLA EDWARDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04 C 3395 |
| | ) |
| THE CITY OF CHICAGO, | ) Wayne R. Andersen |
| | ) District Judge |
| Defendants. | ) |

## MEMORANDUM, OPINION AND ORDER

Before the Court is the defendant's motion for summary judgement. For the foregoing reasons, the defendant's motion for summary judgment is granted. Additionally, the Court will consider several motions seeking to supplement and/or strike Rule 56.1 statements and responses, which bear upon the Court's consideration of undisputed facts.

## BACKGROUND

Plaintiff, Priscilla Edwards ("Edwards"), began working for defendant, City of Chicago (the "City"), in October 1973. Edwards participated in the City's early retirement program and voluntarily retired, effective May 31, 2004. By the time of Edwards retirement she was a Communicable Disease Investigator II ("CDI-II") with the Department of Health (the "Department"). The Department oversaw several clinics, including ones located at or near Uptown, Lakeview, 31st Street, South Austin, Engelwood, Roseland, and 10 S. Kedize.

From 1994 through September 2000 Edwards worked with patients infected with sexually transmitted diseases ("STDs") at the Roseland Clinic, located at 115th St. and Indiana Ave. in Chicago. Seeking a change, Edwards requested a transfer to the Uptown Clinic in September 2000.

The Uptown clinic, unlike Edwards's previous assignments, provided care for patients with tuberculosis ("TB"). Edwards received a month of training and began handling her own TB patients in November 2000. Osagie Igbinosun was Edwards's supervisor at Uptown. Igbinosun was an African-American male over 40 years old. Edwards's coworkers and supervisors included women, minorities, and several individuals over 40 years old. Both parties agree there was a great deal of tension between Edwards and her coworkers.

In November 2000, Igbinosun reprimanded Edwards for failing to deliver medications to her patients. A month later, Igbinosun noticed Edwards struggling while attempting to administer a TB test. Igbinosun then provided Edwards with additional training and assigned her to work with another CDI-II. The parties dispute the nature and extent of Edwards's other job-performance difficulties. However, they agree that Edwards was reprimanded yet another time for leaving a leaking container filled with a specimen from an infected TB patient on a nurse's desk.

Igbinosun held weekly staff meetings. Many of Edwards's coworkers were present for these meetings, including Fred Woods, an African-American male over the age of 40. Edwards claims Woods referred to her as "Buckwheat," a character from *Saturday Night Live* played by Eddie Murphy, between one and five times over a nine month period. Edwards also refers to several other impolite comments cowokers made to her urging her to "move on" and "shut up."

Edwards claims that she was forced to transfer to 10 S. Kedzie from August 2001 through mid-October 2001 (there is some dispute as to the exact dates). Igbinosun contends that Edwards responded to a call for volunteers at the 10 S. Kedzie clinic, which was in need of additional CDI-II's with experience treating TB patients. The Collective Bargaining Agreement ("CBA") covering Edwards at this time mandated that transfers be assigned on a reverse seniority basis, unless they

were voluntary. Edwards, a City employee since 1973, was one of the more senior members of the Uptown Clinic staff. Edwards was familar with the CBA and the grievance process it required, yet never filed a grievance over her transfer to 10 S. Kedzie. In October 2001, Edwards was transferred back to the Uptown clinic, where she worked until her retirement in 2004.

In 2002, Edwards filed a charge with the Illinois Department of Human Rights ("'IDHR'") and the EEOC alleging discrimination based on race, sex, and age. The IDHR dismissed her charge for lack of substantial evidence. Edwards was issued a right-to-sue letter in 2004. Shortly thereafter, she brought this lawsuit. Edwards's claims for gender discrimination brought under 42 U.S.C. § 1981 ("§1981") were dismissed earlier in this litigation. Edwards's suit is presently proceeding under a theory of race and gender discrimination actionable pursuant to Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000 *et seq.* ("Title VII") and age discrimination forbidden by the Age Discrimination in Employment Act of 1997, 29 U.S.C. § 621 *et seq.* ("ADEA").

## DISCUSSION

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment may only be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party must present more than a scintilla of evidence to defeat summary judgment and may not rest upon "the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Senner v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir. 1997). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the

3

existence of the truth of the matter asserted." *Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983). The Seventh Circuit has stressed that "[s]peculation does not create a genuine issue of fact, instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995). The fact-intensive nature of employment discrimination cases does not oblige the court to "scour the record" for factual disputes to help a plaintiff avert summary judgment. *See Greer v. Bd. of Ed. of the City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001).

Before this Court are several motions concerning the Rule 56.1 statements of the parties. Since these motions bear upon the facts the Court will rely upon in determining the motion for summary judgment, they are considered first.

Local Rule 56.1 for the Northern District of Illinois requires that the parties support all disputed facts with specific references to the record and further emphasizes that it is inappropriate to include legal conclusions and/or argument in the Rule 56.1 statements of facts. *See Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000) (all relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary materials"). The Seventh Circuit repeatedly has sustained the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the local rules and regularly upholds strict enforcement of Local Rule 56.1. *See Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995) (citing cases); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000).

The City seeks to make a correction to its statement of material facts. Because this correction does not prejudice Edwards, the City's motion is granted. The City also moves to strike Edwards's

affidavit and that of her coworker, Terri Bell, because they do not rely on personal knowledge and are not notarized. However, Edwards moved to file notarized affidavits identical to those in her original filing, which we will allow. The City's motion to strike those affidavits is, therefore, denied. Nevertheless, the Court will only consider those assertions in the affidavits to which the affiants are capable of testifying. Finally, Edwards moves to strike the City's response to her statement of material facts for interposing improper legal objections. The City's response to Edward's statement of material facts does indeed contain legal conclusions. The parties are reminded that Rule 56.1 statements and responses should not contain legal argument or conclusions. *See, e.g., City of Country Club Hills v. U.S. Dept. of H.U.D.*, No. 99 C 7139, 2001 WL 1117276, *1 (N.D.Ill. Sept.17, 2001). Accordingly, Edward's motion is granted and those portions of the City's response asserting legal conclusions or argument are stricken.

### B. Race, Gender, and Age Discrimination

Title VII makes it an unlawful act for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . ." 42 U.S.C. § 2000e-2(a)(1). Under the Age Discrimination in Employment Act ("ADEA"), it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003). Despite the different statutory bases for Edwards's claims of race, gender, and age discrimination, we apply the same analysis to them. *Id.* at FN 5 ("We employ essentially the same analytical framework to employment discrimination cases whether they are

5

brought under the ADEA, Title VII , or § 1981.") citing *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000); *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir.1999).

A plaintiff can prevent the entry of summary judgment in an employment discrimination lawsuit by providing either direct or indirect evidence of discriminatory intent. *See Adams v. Wal-Mart Stores, Inc.*, 334 F.3d 935 , 938 (7th Cir. 2003) (race); *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 646 (7th Cir.2005) (sex). The direct method of proof is extremely difficult for a plaintiff to proceed under, as it "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Perhaps this is why courts have taken note that "[i]n pleading discrimination cases, litigants, usually as an alternative argument, will often contend that they have unearthed direct evidence of discriminatory intent, but such direct evidence-eyewitness testimony as to the employer's mental processes-is rarely found." *Id.* (internal citations and quotations omitted). Edwards cannot credibly claim to have anything remotely close to direct evidence of discrimination.

A plaintiff may also allege disparate treatment using indirect evidence and the burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 620 (7th 2001). To proceed under the burden-shifting method, a plaintiff must make out a *prima facie* case of employment discrimination. Once this is done, the employer is required to articulate a non-discriminatory reason for the employment decision. Then, the plaintiff may attempt to show that the proposed reason is a mere pretext. *Id.*

To establish a prima facie case of age discrimination, a plaintiff must show: (1) she is a member of a protected class; (2) she performed her job satisfactorily and was meeting her employer's

legitimate performance expectations; (3) she suffered an adverse employment action; and (4) another similarly-situated employee who is not a member of the protected class was treated more favorably. *See Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002).

As an employee over 40 years old Edwards is in a protected class pursuant to the ADEA. Title VII places her in a protected class as an African-American women. However, this is where Edwards *prima facie* case begins to fall apart. It is debatable whether she was performing her job satisfactorily. However, assuming for the sake of argument that Edwards was performing her job satisfactorily, it is difficult to see how a brief transfer to a separate facility with the same job title is an adverse employment action. Moreover, there is no similarly situated CDI-II that was treated differently. Edwards admittedly transferred to Uptown from another clinic, received new training to assist TB patients, and was reprimanded several times for not properly adhering to protocols for TB patients. Edwards does not establish a *prima facie* case. Even if she did, there is no evidence the City's employment decisions were discriminatory. The City says Edwards was moved to 10 S. Kedzie because there a need for volunteers and she offered to switch locations. The record supports the fact that her supervisors thought she volunteered to move locations.

Edwards simply has no credible evidence that any City employee took any action, failed to take any action, or made any comment because of her age, race or sex. That Edwards and those who allegedly discriminated against her are of the same race, age, or gender does not bar her claims. *See, e.g., Oncale v. Sundowner Offshore Services*, 423 U.S. 75 (1989). However, the complete lack of any evidence of discrimination is fatal to her case. The facts brought forth by the parties mean that no rational finder of fact could find that the City took any employment action for discriminatory reasons. The reasons the City sets forth for moving the Edwards's place of employment are entirely

7

reasonable. Moreover, despite serious violations of protocol by Edwards, the City decided to retrain Edwards, not fire or demote her. Edwards offers no credible evidence to show that the City's expressed reasons for moving her to 10 S. Kedzie were pretextual.

Edwards also alludes to a hostile work environment, which is actionable under the ADEA and Title VII. Employers cannot "requir[e] people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 701 (7th Cir.2001). To prove a hostile work environment the alleged harassment must be "both subjectively and objectively so severe or pervasive as to alter the conditions of [] employment and create an abusive working environment." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir.2004). Mere insults rarely rise to the level of a hostile work place, for "[t]he workplace that is actionable is one that is 'hellish.' " *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir.1997). "In determining whether the environment was objectively hostile, a court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work." *Wyninger*, 361 F.3d 976. A merely uncomfortable workplace is not "objectively hostile." *Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 903 (7th Cir. 2005) (refusing to find a hostile workplace despite behavior that "would have made a reasonable employee uncomfortable). In fact, the Supreme Court has noted that Title VII is not a code of civility. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Both parties attest to the fact that Edwards had poor relationships with her coworkers and supervisor. However, the only evidence Edwards refers to that could conceivably be considered to

illustrate a work place hostile to those of a certain age, sex, or race is a comment made by Edward's coworker referencing a *Saturday Night Live* character, "Buckwheat." The use of the name "Buckwheat" arguably in reference to Edwards is inexcusable, rude, and obnoxious. Nonetheless, it is not the type of behavior that creates a hostile work environment actionable under discrimination laws. The term was not used in a threatening way, it was not made by a supervisor, and Edwards has not claimed it adversely impacted her job performance. All other comments are merely those of disgruntled coworkers. "Move on" and "shut up" are neither racist nor sexist. Edwards fails to offer any evidence that could possibly give rise to a hostile work environment claim related to her race, gender, or age.

## CONCLUSION

For all of the foregoing reasons, the City's motion for summary judgment [39-1] is granted. The City's motion to amend its Rule 56.1 statement [54-1] is granted, as its motion for an extension of time [73-1]. The City's motion to strike [56] is denied. Edwards motion to file a supplement to her Rule 56.1 statement [71-1] is granted, as is her motion to file a response to the City's motion to correct its statement of facts [67]. Her motion to strike the City's Rule 56.1 response is [69-1] is granted as to the City's use of legal arguments in its Rule 56.1 response.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: 3/23/06

9